1-4-6-3-8-5 United States of America v. Jairus Coker Arguments not to exceed 15 minutes per side Mr. Moffitt for appellant May it please the court my name is Jonathan Moffitt I'm an assistant federal community defender from Knoxville Tennessee and I represent the appellant Jairus Coker in this matter  you may thank you your honor if it please the court I would like to primarily address the issue there was a second issue in the appellant's brief which was whether there was reasonable suspicion for a detention of the defendant in this case when the and and I think that what's what's important is after the appellant's brief was filed the United States Supreme Court has I think that case clarifies what what the what the rule is regarding detention beyond the the time reasonably required to complete the mission mission of issuing a warning ticket and basically that case that case holds that a seizure remains lawful so long as unrelated inquiries do not measurably extend the duration of the stop I believe that the Sixth Circuit opinions were primarily following that rule before the decision but I believe that decision does impact this case and it impacts the decision of the district court in this case the report and recommendation of the magistrate United States magistrate judge essentially became the district court's order the district the district court judge affirmed it in all respects it's a lengthy opinion but I believe that the Rodriguez case does affect that opinion and and most importantly I think that the timing of the case is important and Rodriguez sort of shows us that as well as some of the Sixth Circuit's more recent opinions following the Mueller versus Mena case and the John Arizona versus Johnson case of the Supreme Court cases of the of the 2000s and when does it um you know we have this timeline when does it break down for you so you have you know it starts at 244 a.m. it's 30 plus minutes what's the what's the period what's your best argument when when does it really break down in terms of there's you've held them too long for the purpose you held them or there's no longer reasonable suspicion or just you can do it however you want to do it I'm just curious what the key point is for you your honor I think that the key point is is at the 255 huh on on the video and and the stop the the stop occurs at 246 we have an initial encounter between the officer and the defendant at 247 that's about a minute and a half encounter and in that encounter I think it's it's a pre-traditional encounter where the the officer asks for license registration proof of insurance he also asks a few questions about where where are you going he asks the defendant where are you from because because his ID is it street where he was pulled over and and those are basically the inquiries at that first at that first discussion between the parties all three of those items are provided that are requested are provided by the defendant and the officer takes them back to his car he he very expeditiously calls in to look to ask for warrants he's checking on Knox County which is the county where the defendant says mother lived he's checking for Blount County as well which is the county where he was pulled over so he gets all of that by 255 right he read it right at 255 or 48 okay so on your your the magistrate judge seems to give you from 310 forward he seems to say as I read it that if he didn't have reasonable suspicion by 310 then you know it's a bad stop between that 255 and 310 do you have some earlier time that you want us to to peg it at your honor I think that from 255 to 310 is is essential is a very important time period because we have we have the the officer and he testifies to this impression hearing he says at the 255 mark that he had all the information he requested but that he decided he was going to investigate further and and so at that at that point and I will state to the court at that point he's already stated to the defendant through through sort of a horn on the on the car to to put your hands out the window and he's gone up to him at 253 or so and talked to him about the fact that they appeared to be nervous and he was okay but what but what's your answer that is well my is there an earlier point earlier than the 310 that you contend we should judge this by your honor I believe the 255 mark well 255 I mean even at best he's got to take some time to write the ticket that is even if he were were completely legit once he gets the all clear from the dispatch it's going to take him a little bit of time to write the ticket isn't it very little your honor I very little I think at that point he's already got the address he it may take a couple of minutes but but what he does maybe your answer is three o'clock I mean that's that might be a better answer to account for judge Boggs point we your honor I don't think I could as your point is your your real point is that 255 he had to make the choice of warning or ticket that's how you see the case and so you have to build in a little time if you're going to do a ticket as he did do your number we have to what we have to look at what the officer did do and and and right at that 255 mark as soon as the bought by 256 he was back at the vehicle but inquiring about so I think anyway I think I'm understanding your answer I think I so judge Boggs question seems like a good point as a modification so what you have in this opinion is you have these soft factors things like the route the time of day and I think sometimes think nervousness is a soft factor but here you also have a finding which strikes me as a little more specific which is he said don't move around and despite that direction the magistrate found he was reaching into the backseat of the car so why isn't that you know I don't know what way to give that other stuff I know the cases give it wait all the time including Supreme Court cases but why isn't that one enough to have reasonable suspicion to it because you're right he doesn't really have a right to investigate further unless he's got suspicion that there's something beyond this traffic violation so why isn't that you know if the officer says don't move around and the guys moving into the backseat with his hands why isn't that an indication something's up your honor I I think one of the things the record I don't think the record is is clear as to the time periods that either the the magistrate judge or the or the officer are saying that he thought he might be reaching in the backseat I mean the the judge finds that but I the testimony well I know but we have it are you gonna say the judge judicial findings clearly erroneous having just admitted that it's hard to say well I think the time period though it's clear that the the magistrate judge is looking for the entire time period up to 310 and and what I'm saying to the court is that at least at 253 that's a very important encounter as well because the officer goes to mr. Coker and says something about the fact he's moving around asked him to put and mr. Coker responds that he's ashing because he's smoking a cigar and then he puts he asked him put to put his to put his hands outside the window and he does that at that point it's not until 304 and two and another two all two meetings between the two people if you want to put it that way that the officer actually says I want you I want to get you out of the car because because of the movement let me ask you about the reaching around because as I read the record and then if your adversary has a different view I'd like to hear that too the things about back appears only at page 57 which is page ID 118 but page 57 of the transcript which is leading question reaching his right hand towards the back center is that how you described it and then he says yeah he was leaning forward and reaching back and then they play the video and I've seen the video as I understand it that's happening and correct me if I'm wrong that's happening pretty early that's happening at like 250 or thereabouts so that that's not contemporaneous with the getting him out of the car or if I'm wrong let me know about that but that's the only place that reaching back ever occurs in the that may be correct I cannot answer that question entirely I I know that there were references to it certainly the court is correct and this time period is talking about prior to 255 but I think it is important that the officer didn't take the officer didn't take any steps regarding officer safety at this point we know that and he testifies that at 255 he had no reason to believe that the defendant was armed but maybe those steps are taken later I may just be your argument is you had basis for the seizure to start because the traffic violation but that ends at 255 or a little later for time for the ticket so at that point it's the officers incumbent upon the officer to show there's reasonable suspicion independent of the violation to continue seizing him so that's why it's relevant that's why I'm trying to putting the soft factors aside but that's why it seems relevant to me he was told not to move and he did move before three o'clock that's what allows him to keep engaging with him and well he continues the seizure that's the key and then the question is was he does he keep getting more information but if if your main point is at three or so he had to let him go to me the question is does his movements to the back of the car when told not to do so give the officer reasonable suspicion to continue to stop that's I don't know the answer I'm just that's how I'm thinking about it and we simply don't think it does your honor because that's not the only one of the important things about the case is that we we sort of know what the officer is thinking at the time does it just in follow-up judge Sutton's question does it in combination with all the other factors does it give him cause and I don't believe so I and I don't believe so your honor because the other factors are and the primary factors that the government was arguing were that they were claiming was a high crime area which the even the United States magistrate judge declined to defined I'm a night the time of night was approximately 2 to 3 3 a.m. to 30 to 3 a.m. and that is that that was the time of night but nervousness matter where did the Rodriguez talks about unrelated unrelated to the stop right so nervousness matters well your honor it can it can matter it can matter but I what what what the officer spoke the most about to the ride-along citizen who was with him was the fact that the defendant was staring at him and making him uncomfortable and that's what that's what the talk is about and we know what he's thinking he actually says to mr. Coker at the 256 point he mentions the time of night and you're driving here from Knoxville as and as the reasons why he's asking the question is there any marijuana in the car and he tells him at that point I could call a drug dog I will call a drug dog or you can let me search and it'll only take two to three minutes was that was that an illegitimate threat at that point I mean can you tell a person in these circumstances you consent or I'll call a drug dog your honor I think it I'm not sure that threat is the the correct word but I think it I think it matters and I think of the look of your opinion in Everett as sort of addressing the fact that we need to see part of the totality of circumstances is what the officer is is asking about and in that case the officer asked about a gun because that officer thought that the reason a person she smelled alcohol in someone's breath and thought that that perhaps she should ask about officer safety here there's no inquiry about a gun and so yes I believe that I believe that is a it was sort of a course of question to mr. Coker to try to get him to consent of course but when mr. Coker didn't and four minutes later the officer calls for the drug dog I believe at that point he had gone too far okay you'll have your time for rebuttal thank you may it please the court my name is Luke McLaurin and I'm the court should affirm the district court's decision in this case because the stop of the defendant's vehicle was supported by probable cause and what and the extension of that stop was supported by reasonable suspicion given that the focus the defendants argument has been upon the extension of the stop that's where I'll focus my response unless the court has some specific questions about the probable cause for the stop I think that judge Sutton and judge Boggs you're trying to get at that precise time that would potentially be problematic and I think that I would agree that the key time that we need to be looking at is what happens at around end of 254 beginning of 255 because at that point it's pretty clear from the record that the officer had everything he completed everything he needed to do to finish issuing the traffic citation and under Rodriguez the the question is did he have reasonable suspicion to keep the seizure going and we would submit that the answer to that is yes and yet as of 255 in a couple more minutes you think you have the reasonable suspicion we think we have the reasonable suspicion before that point I mean there's a lot of facts that develop the magistrate am I right the magistrate judge really knocks down this high crime area and nervousness he relies solely on the time of night and the moving around is that fair as to what the magistrate I do believe that's an accurate characterization of what the magistrate judge relied on what we would also point out that this court can review this issue de novo and is not compelled to agree with the magistrate judge as to the salience of those particular factors that I will point out the magistrate judge did not dispute that in fact it was late at night and that's an undisputed fact and the officer high crime area is like a small town 16 miles outside Knoxville the you got to come from somewhere to get there yes and it does seem like a strange thing but there was testimony to support that I mean the officer testified that he was aware of burglaries and drug trafficking in this area he testified that he worked in this area and I think here's what's key is he testified that typically when there was drug activity in this area it occurred late at night and that the drugs that would be coming into this area were coming in from Knoxville and that's what we submit that those two two factors the fact that this defendant was coming from Knoxville the fact that it was late at night the fact that the officer perceives to be a high crime area these are all contextual factors but we agree with judge Sutton that really the key factor here is is this is the defendants movements the way the defendant behaved my question my question I want to raise on that is I was on another case where the officers having a perfectly fine conversation with the person in the car and then suddenly he jumps back and pulls his gun because he's seen the guy go into the console okay now here at least my trigger point this business about reaching back and forth and that's why I asked about page 57 that happens fairly early on and the officer doesn't say he's going into the back seat he says he's leaning forward and I see it reaching behind him but the officer doesn't have any concern there even later than that he tells him you can put your hands back inside so the question of that officer safety doesn't seem to be in play until all of a sudden he pulls him out of the car with no particular basis that I saw what do you say to that I would disagree with the latter part of what you said I don't think he didn't have a basis but I think it's important to walk through factually what happened and see that that these movements that he first sees and this is all before this this 255 time that we're talking about he sees these movements of this individual appearing to reach for the back he's also staring down the officer which is a very unusual activity the officer testified to that gives him concern that this individual has something that he's trying to hide or perhaps reach for so at that point the officer has a suspicion that there might be drugs again because of these other contextualized factors but he also has a concern that there might be a weapon there and then he tells that so you know at that point I think what the officer is trying to do is not escalate the situation you don't want to have pull out the gun and shoot you so what the officer does he tries to address it reasonably so by saying look keep your hands and don't move your hands around stop this fidgeting that and he does this several times throughout and it's only at the point where you know it's been about the third or fourth time where the defendant has not kept his hands where he's supposed to well now wait a minute I thought the hands all the time when he says put him out the window he puts him out the window and in fact he's got him out the window and the officer says okay you can put your hands inside he says you can put your question of what does fidgeting or moving mean but if he was concerned he's already told him to keep his hands out and he's done it he's also told him to keep you know to stop moving and and what happens that I think triggers the officer to get out of the vehicle and pull the defendant out is that this has been the third or fourth time and the defendant is still moving and at that point you know the officer has already called the the drug dog because he has suspicion that there might be drugs in the vehicle and at that point he's he is concerned for his safety because he's given this this individual several commands to you know it takes different forms at one point it was you know keep your hands outside then he's like okay it's fine if you put him in just don't move around he made clear to the defendant what he was concerned about was this movement and the reason that the officer was concerned is because he suspected that there was something in the vehicle it could have been a weapon it could have been drugs and and at a certain point the the continued movement made the officer concerned look this guy may be reaching for a weapon it is in my bet safety interest to get him out of the vehicle and just get him away up for whatever he's trying to grab you which I think what judge box is saying why didn't he do that earlier well you know I we don't the record doesn't specifically answer the question as to why I didn't do that earlier I would submit that what the officer was probably trying to do was to not escalate the situation that the officer was trying to use measures that would be less restrictive than having the defendant get outside of his vehicle something which you know the Fourth Amendment should should apply he's entitled we know he's entitled to get him out of the car for no reason that's that's good law right yes but at the same time you know allowing individuals to stay inside their vehicle if the officer can come up with another way to keep himself safe I mean I think it would be commendable to encourage officers to seek ways to you know engage with individuals safely that he can be less restrictive on their freedom he gets him out so in the first place your contention would be that by 258 or 300 he's got reasonable suspicion period he could have held him forever at least until the drug dog got well not forever he heard you know within a reasonable period okay he has reasonable suspicion that there is some drug trafficking going on and he tries to dispel that suspicion by going up to talk to the defendant and he actually gets more information that encourages that suspicion the defendant admits that he's been around weed smoke which suggests that look this guy is somebody who is familiar with drugs that only further confirms the suspicion that he has now there was some talk about his comments of potentially being a threat about oh hey you know will you let us search I would suggest judge Boggs that we should look at it is the officer was trying to be diligent in his pursuit he wasn't trying to threaten the individual here he was simply say the individual saying look I want to get on the road and the officer saying well I have this concern I can dispel my concern by taking a quick look around your car if you're willing to let me do that that's what I'll do and that would be the quickest way that will get you on on the road the quickest and when it was only after he said no I don't want you to search my vehicle and it took him about two or three minutes to figure that out that he didn't want the officer to search his vehicle then at that point the officer goes back to his car and by saying if you doesn't he if you don't consent I'll call the drug dog yes because he has a suspicion of drug trial he wants to I mean he wants to dispel the suspicion he's trying to give the defendant an opportunity to allow him to dispel the suspicion in a way that would be less intrusive than having a drug dog put it differently don't we have to say that he had to have enough suspicion to hold him in order to make that threat legitimate in other words if I just get stopped on the on the road and the policeman comes up and says consent to search the car or I will hold you until I get the drug dog you probably can't do that can he that I would agree with that judge Boggs in our position you have to have reasonable suspicion by that okay that there was by that time that this person had drugs he had a reasonable suspicion to believe that there were drugs in the vehicle and that's why he goes up what you would say he could have said at that point was you know I hate to say this but I think you've got drugs in the car that's my sense of things I'm gonna call the drug dog if you don't want me to call the drug you don't want that I'm happy to get consent to search myself it's your call but he would have been very direct he would have said I think there are drugs in this car I'm gonna search if you consent if not I'm getting a drug dog and that would not have been illegal and I think that's what the officer was trying to do here in terms convey that same kind of message he didn't convey it as eloquently or as no no no no I know exactly why he's doing what he's doing it's a very clever question to say would you consent because it creates a lot of cognitive dissonance in the mind of the person in the car because you're like I know if I say no it suggests there's a reason I'm I've got something to hide but if I say yes they'll find the drugs or the gun it's a it's a really tough question to answer he has the right absolutely I don't consent but he did well I would say any concerns that the be troubling in this particular case because at the end of the day what the defendant did is he says look I don't consent and that officer fully respected that well there's no Miranda warning in the Fourth Amendment I mean that's Robinette so the officers allowed to do this I mean they do this all the time but I'm telling you what I'm telling you I disagree entirely with your explanation of why the officer didn't say what I said well I can't I can't go into the mind of the officer I only know what's what's in the record and I appreciate your concern judge Sutton it's a legitimate concern especially in light of general concerns that we have about interactions between law enforcement and citizens but I think your focus primarily it were all the focus here is on the concern about drugs what about the holster that is found should this court be does that go in the mix well they worry about weapons yes I think at that point there's also I mean once you find the holster once they found the holster again this is all after the pat-down and everything then I think the the officers got even further suspicion that there's a that there's a gun in the vehicle and in his suspicion is further piqued about this defendant because you know he's found a holster that's clearly a gun holster and the defendant says oh no no I use my cell phone in that there doesn't seem to be any discussion the officer I guess the reaching back could be about a weapon more than drugs but it seems like your case is primarily built on suspicion of drug trafficking the route etc it's nothing about well the suspicion of safety there's both present in this case the suspicion of drug trafficking is what allows the officer to call out the drug dog because you don't call out a drug sniffing dog to sniff for firearms they sniff for drugs but at the same time the officer also had a concern about his safety which is why he pulled the defendant out of the vehicle conducted the pat-down and the officer also testified that in his experience on firearms were frequently connected with drug trafficking so once he found the holster on this individual that I think bolstered his suspicion that hey there might be drugs in this vehicle magistrate judge didn't rely on the holster in making a finding of reasonable suspicion no he didn't and I think the reason for that is because the as we talked about earlier you really need the reasonable suspicion at that 255 point at the point that you're extending the stop beyond the traffic stop and we submit that at that point there was reasonable suspicion of drug tracking trafficking but finally we would know that you know even if this court were defined and we don't think it should that there was somehow a Fourth Amendment violation here that wouldn't mean that suppression is an appropriate remedy the Supreme Court has made very clear that suppression isn't always the remedy for a Fourth Amendment violation and that it should only be used in cases where there's you know sort of gross police misconduct that suppression could deter and I would encourage the court to listen to the officers comments on this video because what you see is an officer what is the test in this area so we're outside warrants and the Leon good faith so that's not what this case is so given the Supreme Court's recent decisions how would you characterize the test of when the exclusionary rule I would I don't have the specific language of herring right in front of me but the language in herring I believe is something along the lines of conduct that is grossly negligent or is do you think it's the same as Leon essentially I mean I think it is but there's no good I mean I think it's a similar test but the difference is in Leon you actually have like a you know or reliance on something the officer can be relying on something here reason for the mistake what's and I think the officer here acted in good faith I think the officer here if you listen what he's really it's very clear that this is a genuine concern that the officer had at the time he was genuinely concerned that there were drugs he was genuinely concerned about his safety and he was trying to pursue and dispel those suspicions and concerns in the best way that he knew possible and and we would submit that even if the court were to find that his actions amounted to a Fourth Amendment violation again we do not agree that they do but if the court were to find that we would still submit where that's held up in a you know this kind of traffic stop case because we have these all the time and many times the police win but many times the you know we've held to the contrary that just wasn't enough reasonable suspicion and I've never seen that argument raised before that well even if there was no reasonable suspicion nevertheless you shouldn't suppress it um is there a good case that that draws that line how much good faith do you need your honor I'm not aware off the top of my head of a specific case where the court has accepted that argument we have made that argument frequently but we usually win on the Fourth Amendment argument that there was no violation of the Fourth Amendment and so the courts have not had to reach so there's not some general principle as there is in Leon where the you know if the warrant seems good enough on its face then you win so you haven't been able to persuade a court to put this in writing yet well we believe the court has put it in writing the Supreme Court in herring but the but the lower courts have not had a chance to to suss out the application of herring as much as they might otherwise because they frequently find that there are no Fourth Amendment violations and thus don't have to get just to go back you would characterize herring is something like unless it's grossly negligent don't suppress the evidence um I would characterize it that way but I would prefer to rely on this specific there's specific language used in the court's opinion that unfortunately I don't have in front of me right this second and I would prefer to use you know there is very specific language of the court used in herring about the type of police misconduct that the suppression rules designed to address and we think that court should only apply it when that type of conduct is at issue all right okay thank you you have your two minutes for rebuttal thank you your honor I wanted to make one important point regarding the first issue whether there was probable cause for the traffic stop the only point I make is that the the government sites at length state versus Davis Tennessee Court of Criminal Appeals opinion December 8 2014 interestingly the the Tennessee Supreme Court granted review of that case as well as a another case from another district and the supreme the state Supreme Court or heard argument about a month ago regarding the issue whether essentially whether crossing over the the middle line on a windy road is enough for probable cause of the stop under the Tennessee statutes I don't know if I don't know if when an opinion will come out whether whether it would be important in this case we think it could be but I mean that's that one if that changes things that you got to believe that's right in the core of herring right because they're the the clarification of law would have come long after the stop and I don't think it's crazy to think people crossing the middle line which is often a DUI problem late at night is something you can't stop people for well your honor there are cases dealing with that issue in another in other sorts of situations I will say about this situation in Tennessee though I think we have cited the court to some cases where they found it that that was not enough for probable cause for a stop and there are cases which state that it is enough in Tennessee as well I think the Supreme Court will be clarifying that it appears and that that could that could have some significant issue for the court thank you anything else Thank You counsel appreciate the arguments clerk may come that case will be submitted clerk may call the next case